UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETTINA SCOTT,<br>　　Plaintiff,<br><br>v.<br><br>SCOTT G. ROSENTHAL,<br>CHARTERED FINANCE AND REALTY CORP.,<br>BAYVIEW FINANCIAL TRADING GROUP, LP,<br>FIRST UNION NATIONAL BANK and<br>INTERBAY FUNDING, L.L.C.,<br>KATHLEEN M. HAYES,<br>MARK D. HAYES a/k/a MICHAEL HAYES,<br>　　Defendants. | 1:04-CV-10855-RWZ |

**OPPOSITION OF THE DEFENDANTS
SCOTT G. ROSENTHAL AND CHARTERED FINANCE REALTY CORP.
TO THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

These Defendants rely upon the Opposition of the Defendants Bayview Financial Trading Group LP, First Union National Bank and Interbay Funding LLC at pages 1-7, together with the exhibits annexed thereto, as generally fair and accurate representations of the facts and claims. These Defendants, therefore, will not repeat the same here.

**III.   Argument.**

To establish entitlement to preliminary injunctive relief, the Plaintiff must demonstrate that there is a substantial likelihood that she will succeed on the merits of her claims, that she will suffer irreparable harm absent the granting of preliminary injunctive relief, that the threatened injury to her outweighs the threatened harm to the Defendants by the granting of the requested relief, and that the public interest will not be dis-served by the granting of the injunctive relief. See Smith and Zobel, Rules Practice, 8A Massachusetts

Practice Series §5.4 (West 1981). See also Shapiro, Perlin, Connors, Collection Law, Vol. 48 Mass Practice Series § 11.24 (West Publishing Co., 1st Ed. 1984; 2nd ed. 1992; 3d ed. 2000).

In practice, this "involves a combined evaluation of the moving party's claim of injury and its chance of success on the merits." Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. 70, 71, 496 N.E.2d 399, 400 (1980). The issue is not merely one of probability of success on the merits but a weighing of the respective threatened harms in light of the respective chances of success on the merits. Packaging Indus. Group v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106, 112 (1980).

For the reasons set forth below, although there is certainly a New York judgment against Chartered and Rosenthal, in this particular case now before the Court, there is no likelihood that the Plaintiff will prevail on the merits of her claims against Chartered or Rosenthal. Further, there is no chance that the Plaintiff will suffer irreparable harm absent the granting of preliminary injunctive relief. Finally, policy favors denying the Plaintiff's requested relief. Therefore, the requested preliminary injunctive relief should be denied by this Court.

### A. The Plaintiff Has No Likelihood Of Success On The Merits In This Action.

The Plaintiff has advanced two claims. One is to reach and apply the Loan Documents because, according to her, Chartered's assignment of the Loan Documents was fraudulent and designed to defraud her. *See* Verified Complaint, Count I. The other claim is pursuant to Mass. General Laws chapter 109A, the Uniform Fraudulent Transfer Act ("Chapter 109A"), whereby the Plaintiff asserts that Chartered's assignment of the Loan

Documents rendered Chartered insolvent and was done in bad faith to defraud her. *See* Verified Complaint, Count II. The Plaintiff will not be able to establish either claim.

### 1. The Plaintiff Cannot Establish a Fraudulent Transfer.

The current version[1] of Chapter 109A sets forth the basic test for a fraudulent transfer, as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (ii) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

M.G.L. ch. 109A §5(a). See Shapiro, *supra*, Vol. 48A, Fraudulent Transfers § 14.26 etseq. Subsection 5(b) then lists eleven relevant factors, including insider status; value of consideration; whether the debtor was insolvent at the time; the timing of the transfer ("shortly before or shortly after a substantial debt was incurred"); and whether the transfer "was of substantially all the debtor's assets."

---

[1] The Uniform Fraudulent Conveyance Act ("UFCA") was replaced by the Uniform Fraudulent Transfer Act ("UFTA") in 1997, although it remained in M.G.L. ch. 109A. In re Rauh, 119 F.3d 46, 48 n.2 (1st Cir. 1997). See Shapiro, *supra*, Volume 48A, Fraudulent Transfers § 14.1. Therefore, many of the cases cited below were actually decided under the UFCA rather than the (current) UFTA. Not surprisingly, the main factors to consider are the same under both.

{00052283.DOC}    3

The caselaw, under the older UFCA is consistent: A conveyance is fraudulent where:

(1) The debtor was insolvent at the time;
(2) Where the transfer/conveyance was not for "fair" consideration or was without consideration; and
(3) Where the conveyance was made "with the intent to hinder, delay or defraud" the debtor's creditor(s).

*See, e.g.,* In re Rauh, 164 B.R. 419, 422 (Bankr.D.Mass. 1994), *aff'd*, 119 F.3d 46 (1st Cir. 1997); In re O'Brien, 190 B.R. 1, 3 (Bankr.D.Mass. 1995). It is the burden of the party claiming fraudulent transfer to prove these factors. In re Rauh, 164 B.R. at 422. Also, see Shapiro, *supra*, Fraudulent Transfers § 14.16.

Here, there is no suggestion that Chartered assigned the Loan Documents with actual intent to hinder, delay or defraud the Plaintiff. In fact, at the time that the Loan Documents were assigned (which is the same time as when the Loan closed), the New York Case was merely at the summary judgment stage; it was not as if the $400,000 verdict had been rendered against Chartered.[2]

Further, there is no suggestion that Chartered failed to receive a reasonably equivalent value for the assignment of the Loan Documents. In fact, it was not Chartered's money that funded the Loan, but rather BayView's. Chartered was merely a "correspondent" lender, and it never technically owned the Loan, nor was it ever intended that Chartered would own the Loan. All that Chartered earned relative to the Loan was $39,300 as an origination/broker's fee.[3]

---

[2] The Plaintiff tries to make something of the fact that the Assignments were not recorded until April 2001, five days after the verdict in the New York Case. But the date of recording the Assignments is irrelevant since recording an assignment (or any loan document for that matter) does not affect that document's validity.

[3] Thus, neither the Loan nor the Loan Documents were ever even an asset of Chartered.

Thus, the Plaintiff will not be able to show that Chartered fraudulently conveyed its rights to the Loan or the Loan Documents.

### 2. The Plaintiff's Reach and Apply Claim Must Also Fail.

Since the Plaintiff will not be able to establish a fraudulent transfer claim pursuant to Chapter 109A, her claim to Reach and Apply the Mortgage must also fail.

### B. The Plaintiff Will Not Suffer Irreparable Harm Sufficient To Justify The Issuance Of Preliminary Injunctive Relief.

A party requesting a preliminary injunction must also demonstrate the existence of irreparable harm, and that the harm to it will outweigh any harm to the party enjoined. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980). Money damages do not constitute the type of irreparable harm necessary for the issuance of injunctive relief.

The Plaintiff has failed to establish (or even allege for that matter) that she will suffer irreparable harm absent the granting of injunctive relief.

As to these Defendants, the funds that passed through the hands of Chartered was its commission for putting the transactions together of $ 38,500.00. See *Affidavit of Chartered and Scott Rosenthal* filed herewith.

There are no longer any assets of Chartered within the Commonwealth of Massachusetts to reach. So, there can be no harm to the Plaintiff in denying an injunction, because the Plaintiff cannot prove that Chartered has any assets within Massachusetts that the Plaintiff can ever reach.

Further, the Plaintiff is claiming money damages, in the form of collecting on the judgment from the New York Case. Should she ultimately prevail on her fraudulent transfer claim made in this case (which, of course, the Defendants suggest is extremely unlikely), and should she somehow secure a judgment against Chartered for the $38,500, the only monies it received when sent to it in New York as its broker's commission, the entities that paid Chartered are sufficiently solvent to satisfy a judgment.[4]

### C. Equities and Policy Militates in Favor of Denying the Plaintiff's Request for Injunctive Relief.

Chartered did nothing wrong here. What occurred in this case is common in the lending industry. Chartered, as a correspondent lender, brokered the Hayes' Loan. BayView underwrote and funded it. The deal allowed the Hayes to refinance. Policy encourages such transactions. Nothing done by anyone was designed to avoid, hinder, delay or defraud this Plaintiff. The relevant documents were all publicly recorded at the Registry of Deeds and nothing was concealed or hidden by anyone.

---

[4] Even if they were not, inability to pay (or to collect on a judgment) is not a sufficient reason for injunctive relief. Otherwise, an injunction would be equivalent to a prejudgment attachment.

### D.     The Court should not issue injunctive relief when there is no threat of repetition.

It is clear that there are no funds in Massachusetts and that there is no threat of repetition of the year 2000 events as set out in the complaint. "Ordinarily a district court is not obligated to issue an injunction absent a threat of repetition. This is not because the issue is necessarily moot—mootness may often require more, *Friends of the Earth Inc. v Laidlaw Envtl. Servc. (TOC) Inc.*, 528 U.S. 167, 190, 120 S Ct 693, 145 L Ed. 2d 610 (2000)—but because injunctions are normally a matter of equity and the court is not required to waste resources where there is no ongoing harm and reasonable threat of recurrence. *Lemon v Kurtzman*, 411 U.S. 192, 200-201, 93 S Ct 1463, 36 L Ed 2d 151 (1973); *El Dia, Inc v Hernandez Colon*, 963 F 2d 488, 498 n. 12 (1st Cir. 1992). Here there is no suggestion of ongoing harm ...." *Coady Corp. v Toyota Motor Distributors Inc.*, 361 F 3d 50, 61 (1st Cir. 2004).

## VI.    Conclusion

The Plaintiff has failed to satisfy the criteria for the issuance of injunction relief. Accordingly, this Court should deny the Plaintiff's Motion to Enjoin.

                          CHARTERED FINANCE REALTY CORP. AND
                          SCOTT ROSENTHAL

                          ~~By their~~ attorney,

                          _/s/ Jordan L. Shapiro_
                          JORDAN L. SHAPIRO. - BBO #454240
                          Shapiro & Hender
                          640 Main Street
                          Malden, MA 02148
Dated: 5/12/04            Tel: 781 324 5200

{00052283.DOC}            8

CERTIFICATE OF NOTICE

I, Jordan L. Shapiro, certify that I this day mailed by regular mail, postage prepaid, a copy of the within Reply to Plaintiffs Response to:

David Russman, Esq.
Michienzie & Sawin LLC
745 Boylston Street
Boston, MA 02116

Todd McGrath Esq.
Seyfarth Shaw
Two Seaport Landing
Boston, MA 02210

Marc E Chapdelaine, Esq.
C/o George Gregson
325 Central Street
Saugus, MA 01906

In addition, I emailed the same to all counsel of record.

SIGNED UNDER THE PENALTIES OF PERJURY May 13, 2004

_____
JORDAN L. SHAPIRO