UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BETTINA SCOTT,<br>     Plaintiff,<br><br>v.<br><br>SCOTT G. ROSENTHAL,<br>CHARTERED FINANCE AND REALTY CORP.,<br>BAYVIEW FINANCIAL TRADING GROUP, LP,<br>FIRST UNION NATIONAL BANK and<br>INTERBAY FUNDING, L.L.C.,<br>KATHLEEN M. HAYES,<br>MARK D. HAYES a/k/a MICHAEL HAYES,<br>     Defendants. | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） | 1:04-CV-10855-RWZ |

## AFFIDAVIT OF SCOTT G. ROSENTHAL
## AND CHARTERED FINANCE AND REALTY CORP.

Now comes Scott G. Rosenthal, individually and as President of Chartered Finance and Realty

Corp., and, being duly sworn, makes the following affidavit:

1. I am President of Chartered Finance and Realty Corp.

2. The corporation acted as broker for a loan transaction referred to in the within lawsuit, which

occurred in June, 2000.

3. The entire transaction was consummated on or about June 9, 2000, although, by inadvertence,

the assignment to the true lender was not recorded until April 3, 2001.

4. A reasonable summary of this entire transaction dated June 1, 2000 ("Escrow Instruction Letter"), for which the corporation was paid a referral or broker's commission in the year 2000 of $38,500, is annexed to this affidavit.

5. All monies were sent in the year 2000 to the corporation in New York. No one on behalf of the corporation came to Massachusetts to complete this transaction. The monies owed to the corporation were sent to and deposited in the corporation's bank account in New York. No one owes the corporation or Scott Rosenthal any monies for any reason in Massachusetts, relating to this transaction.

6. There is no basis for an injunction, as the transaction was consummated in June, 2000, as set forth in all of the documents of all of the parties. It is indisputable and the Plaintiff cannot produce evidence to contradict that this run-of-the-mill mortgage transaction did not occur and was consummated as set forth in the recorded documents at the Registry of Deeds.

7. There is no money owed or owing to the corporation as of the payment in 2000 and there never will be, as a result of this transaction.

SIGNED UNDER THE PENALTIES OF PERJURY MAY 13, 2004.

CHARTERED FINANCE & REALTY CORP.

BY _____
        SCOTT ROSENTHAL, PRES.

_____
SCOTT ROSENTHAL, INDIVIDUALLY



**2665 South Bayshore Drive**
**Third Floor**
**Miami, Florida 33133**
**Telephone: (305) 854-8880**
**Fax: (305) 854-9939**

*Escrow Instruction Letter*

June 1, 2000

Chartered Finance & Realty Corporation
Attention: Scott Rosenthal
575 Lexington Avenue, Suite 2850
New York, New York, 10022

Peter Brooks, Esq.
Brooks & Lupian, P.A.
190 North Main Street
Natick, Massachusetts 01760

Richard M. Golder, Esq.
Marsh, Moriaty, Ontell
  & Daccy, P.C.
One Bowdoin Square
Boston, Massachusetts 02114

> **RE:**   *$655,000.00 Mortgage Loan By CHARTERED FINANCE & REALTY*
> *CORPORATION ("Lender") to KATHLEEN M. HAYES and MARK D. HAYES*
> *("Borrower")*

Gentlemen:

This letter shall constitute the escrow instructions to be followed by all parties hereto for closing of the above-referenced loan to be made by Lender and Borrower.

Bayview Financial Trading Group, L.P. ("Purchaser") will be purchasing the above-referenced loan (the "Loan"). The Loan is being purchased from Lender (hereinafter referred to as "Lender" or "Seller") for a purchase price equal to 100% of the unpaid principal balance of the Loan ("Purchase Proceeds"). *Richard M. Golder, Esq*. ("Escrow Agent") has been engaged by Seller to close the Loan and agrees to be bound by the terms of this letter for the benefit of Lender and Purchaser. *First American Title Insurance Company* has been engaged to issue the Lender's policy of title insurance (the "Title Agent") for purposes hereof, the terms "Escrow Agent" and "Title Agent" may be collectively referred to as "Closing Agent".

1.     Bayview Financial Trading Group, L.P. will provide funding for the purchase of the Loan by wire transfer of the Purchase Proceed in immediately available funds as follows:

|  |  |
|---|---|
| **BANK:** | Fleet National Bank |
| **ACCOUNT NUMBER:** | 005719-4342 |
| **ACCOUNT NAME:** | Marsh, Moriarty, Ontell & Dacey, P.C. |
|  | Client's Conveyancing Account |
| **BANK CITY, STATE:** | Boston, Massachusetts 02109 |
| **ABA NUMBER:** | 011000138 |
| **REFERENCE:** | Bayview Financial Trading Group, L.P. |

Chartered Finance & Realty Corporation
  To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 2

2.      The Seller hereby represents and warrants that it is the legal and equitable owner and holder of the Loan, free and clear of all liens. Effective upon wire transfer of the Purchase Proceeds in accordance with the wire transfer instructions provided herein, Seller acknowledges that it shall have been paid in full for the Loan and that it shall have no further ownership interest in the Loan.

3.      Closing Agent acknowledges that it has prepared and/or received a Settlement Statement for the Loan. Closing Agent agrees, to confirm that the legal descriptions attached to the documents are correct and upon receipt of the Purchase Proceeds, agrees to disburse funds and record documents in accordance with the Settlement Statement attached as *Exhibit "A"* and closing instructions contained in this letter. Closing Agent shall not change the Settlement Statement without the consent of both Purchaser and Seller.

4.      This letter is being executed for the benefit of Bayview Financial Trading Group, L.P. ("Bayview") and Bayview is relying on the statements contained in this letter in its purchase of the Loan from the Seller. This letter may be executed in any number of counterparts, all of which taken together shall constitute one in the same instrument and any of the parties hereto may execute this letter by signing any such counterpart.

5.      The Closing Agent must satisfy the following requirements before Purchase Proceeds may be disbursed:

a.      The Closing Agent shall acknowledge that all requirements have been satisfied and it is understood that Closing Agent has confirmed that all documents have been delivered and witnessed, that all documents are in recordable form, and that *all exhibits (including property descriptions) have been appended.*

b.      Escrow Agent shall be in a position to record the:

♦   Mortgage and Security Instrument and Assignment of Leases and Rents in the official records of the county or district where the property securing the Loan is located ("County Recording Office").

♦   *UCC-1 Financing Statement in the County Recording Office and in the Office of the Secretary of State of the state where the County Recording Office is located.*

♦   Subordination Agreements in the County Recording Office and in the Office of the Secretary of State where the County Recording Office is located.

6.      Escrow Agent shall have received from Borrower or Seller all necessary funds in excess of the Purchase Proceeds to pay all expenses of closing, in the amount set forth in the Settlement Statement.

7.      Create a separate file folder for each Loan included in the transaction. Label the file folder with the Mortgagor's last name, the Seller's account number, the deal number assigned to the transaction by Purchaser, and Seller name. Place the following executed documents in the file (collectively, the "Custodian Documents"):

♦   Original Note and Allonge (which is endorsed in blank) and one certified copy;

Chartered Finance & Realty Corporation
To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 3

- ♦  If enclosed, original Guaranty;
- ♦  Original Mortgage and Riders with evidence of recording thereon, if already recorded, or a certified true and correct copy of the document sent for recording if unrecorded;
- ♦  Original Assignment of Leases and Rents, if already recorded, or a certified true and correct copy if unrecorded;
- ♦  Original recorded intervening assignments, as required;
- ♦  Assignment from Seller to blank in recordable form but not recorded, of the Mortgage/Deed of Trust;
- ♦  Assignment from Seller to blank in recordable form, but not recorded, of the Assignment of Leases and Rents and all other loan documents;
- ♦  Original UCC-3;
- ♦  Assignment from Seller in blank recordable form, but not recorded;
- ♦  Original evidence of Title Insurance (*i.e., Title Commitment, Preliminary Title or Title Policy*);
- ♦  Original executed Escrow Letter;
- ♦  Original Subordination Agreements if already recorded or a certified true and correct copy if unrecorded;
- ♦  If enclosed, original Operations and Maintenance Program Agreement; and
- ♦  Original Assignment of Other Loan Documents.

8.      *The original executed Escrow Instruction Letter and the Custodian Documents must be forwarded to the following address by overnight early morning delivery service (Federal Express Priority) to arrive by 9:00 a.m.:*

FIRST UNION NATIONAL BANK
214 N. Hogan Street, Room 43-L
Jacksonville, Florida 32202
Attention:  Debbie Tate
Telephone:  (904) 489-1199

9.      *An exact copy of all Custodian Documents, along with all other original closing documents, including Affidavits, Closing/Settlement Statements and a copy of the Borrower identification (collectively, "Purchaser Documents) must be forwarded to the following address by overnight early morning delivery service (Federal Express) to arrive by 10:00 a.m.:*

BAYVIEW FINANCIAL TRADING GROUP, L.P.
2665 South Bayshore Drive, Third Floor
Miami, Florida 33133
Attention:  Paulette M. John
Telephone:  (305) 8534-8880

10.      You will be advised of any document exceptions noted by Purchaser and/or the Document Custodian prior to funding.  Make certain to reference the Purchaser account number when delivering document exceptions to the Custodian.  *Collateral deficiencies will result in funding delays.* We urge you to discuss any collateral issues with the Seller prior to funding approval.

Chartered Finance & Realty Corporation
 To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 4

11.    The Escrow Agent shall be in a position to issue a 1992 ALTA Loan Policy (the "Title Policy"); (1) in the amount of the Loan; (2) to be dated as of the time of the recording of the Mortgage/Deed of Trust; (3) insuring fee title to the property vested in Borrower; (4) insuring Lender that the lien of the Mortgage/Deed of Trust constitutes a first and valid lien upon the property subject only to non-delinquent *ad valorem* real estate taxes not yet due and payable; and (5) subject only to the exceptions, if any, set forth in your Preliminary Title. All taxes are to be paid current. There is to be no creditor's rights exception in the Title Policy. No additional matters, whether prior or subordinate to the Mortgage, shall appear in Schedule B to the Title Policy without the Lender's and Purchaser's written consent. The fees for the endorsements must be included in the Settlement Statement. The Title Policy will contain recording information with respect to the above-referenced documents being recorded, and otherwise in a form identical to the marked up Preliminary Title or *Title Commitment No. 00-31027* attached hereto as *Exhibit "B"* (the "Preliminary Title Report") with appropriate gap coverage. The Title Policy must show the name of the insured as *"Lender, its successors and/or its assigns."*

12.    Upon satisfaction of the above requirements and receipt of the Purchase Proceeds, Closing Agent shall do the following:

a.    Disburse the Purchase Proceeds and any additional funds received from Borrower/Seller in accordance with the Settlement Statement.

b.    Record the following documents (the "Recorded Documents") in the appropriate recording office in the following order:

- ♦ The Mortgage/Deed of Trust and Security Agreement;
- ♦ The Assignment of Leases and Rents, if applicable;
- ♦ The UCC-1 Financing Statement with the County and the State or District, if applicable; and
- ♦ Subordination Agreement, if applicable. The Subordination Agreement must be recorded prior to the subordinate lender's mortgage documents, as same may be applicable.

c.    Issue the Title Policy set forth above.

13.    Borrower shall pay all costs and expenses in connection with the closing of the Loan, including those which may be incurred for the Title Policy and endorsements (including future endorsements), escrow fees, photocopying, recording and filing fees, mortgage taxes, documentary stamps, title company services and all other fees, charges and taxes. Lender and Purchaser shall have no responsibility or liability for any costs or expenses which may be incurred in connection with closing this Loan.

14.    By acceptance of these escrow instructions, you acknowledge and agree that upon your disbursement of the funds, in accordance with these instructions, the title insurance premiums will have been paid and the Title Commitment referred to above shall constitute Lender's Title Insurance Policy, effective as of the date of such disbursement, until receipt of the revised Title Policy containing all the appropriate recording information. In this connection, you shall have obtained whatever assurances you deem necessary from the appropriate parties to firmly bind yourself to fully and completely carry out these escrow instructions.

Chartered Finance & Realty Corporation
 To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 5

15.     Escrow Agent agrees to collect not less than two (2) months in advance for taxes and insurance ("Escrow Funds") as per the Settlement Statement and any additional fees due Purchaser. Escrow Agent agrees to send a check for all additional fees and Escrow Funds held in escrow to the following parties below.  Purchaser will provide the Purchase Proceeds on a gross basis, less accrued interest.  Accrued interest will be calculated on an actual/365 basis.

| *Escrow Funds:* Payable To:<br>Interbay Funding, LLC<br><br>*Additional Fees*: Payable To:<br>Bayview Financial Trading Group, L.P. | *Send Checks To*:<br>Bayview Financial Trading Group, L.P.<br>2665 South Bayshore Drive, Third Floor<br>Miami, Florida 33133<br>Attention: Paulette M. John |
|---|---|

16.     These instructions shall expire three (3) business days from the date of the receipt of Purchase Proceeds.  Purchaser may extend the expiration date from time to time by telephone notice to you.

17.     If this Escrow Instruction Letter accurately sets forth your agreement and understanding of the above described transaction, please sign and return a copy of this letter to Purchaser.  Escrow Agent agrees if it is not able to disburse funds in accordance with the settlement schedule within three (3) business days of receipt of the Purchase Proceeds, to immediately return the Purchase Proceeds to Purchaser.

ATTACHED EXHIBITS:     The following Exhibits are attached to this Letter:

☒ Exhibit A     Settlement Statement
☒ Exhibit B     Preliminary Title Report

Sincerely,

BAYVIEW FINANCIAL TRADING GROUP, L.P.,
 By its General Partner
 BAYVIEW FINANCIAL MANAGEMENT CORP.,

By: _____
       Brian E. Bomstein, Vice-President

ACKNOWLEDGED AND AGREED TO THIS _____
DAY OF JUNE 2000

CHARTERED FINANCE & REALTY
CORPORATION

BY:_____

PRINT NAME:_____

TITLE:_____

ACKNOWLEDGED AND AGREED TO THIS _____
DAY OF JUNE 2000

RICHARD M. GOLDER, ESQ.
MARSH, MORIATY, ONTELL & DACEY, P.C.

BY:_____

PRINT NAME:_____

TITLE:_____

Chartered Finance & Realty Corporation
 To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 6

# EXHIBIT "A"

## SETTLEMENT STATEMENT

### (TO BE ATTACHED)

Chartered Finance & Realty Corporation
 To Kathleen M. and Mark D. Hayes
June 1, 2000
Page 7

# EXHIBIT "B"

## PRELIMINARY TITLE REPORT

### (TO BE ATTACHED)